45 N.J. Super. 302 (1957)
132 A.2d 523
WALTER H. BOCK, PLAINTIFF-APPELLANT,
v.
PLAINFIELD COURIER-NEWS, A CORPORATION OF NEW JERSEY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued April 8, 1957.
Decided June 3, 1957.
*305 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Aaron B. Weingast argued the cause for plaintiff-appellant (Mr. Joseph A. Pennica, attorney).
Mr. Edward Sachar argued the cause for the defendant-respondent (Messrs. Sachar, Sachar & Bernstein, attorneys).
The opinion of the court was delivered by FREUND, J.A.D.
This is a libel action in which the plaintiff appeals from an adverse summary judgment entered upon the pleadings and depositions taken on behalf of the plaintiff.
The plaintiff Walter H. Bock, a carpenter, had previously brought a negligence action against Oscar Scharf in the Somerset County Court to recover damages for personal injuries he sustained while riding a bicycle, claiming that "Scharf knocked him to the ground as he opened the door of his car." The action was uncontested and the trial resulted in a judgment of $500 for Bock. The present action is based upon the publication in defendant's newspaper of the report of that trial, which news report is alleged to be false and defamatory in that the plaintiff is held up to ridicule and contempt.
The complaint charges that in publishing the article the defendant acted maliciously and with the willful intent to injure him in his business standing, reputation and good name, and demands punitive as well as compensatory damages. No items of special damage, however, are specifically stated. *306 R.R. 4:9-6. The defendant, by its answer and on the motion for summary judgment, denied that the article was defamatory or that it was published with malice, and contended that it was true in substance and was a fair and impartial report of a judicial proceeding and, hence, privileged. The court granted the defendant's motion for summary judgment for the reason "that there was no genuine issue as to any material fact challenged," holding that the publication constituted a fair and impartial report of a judicial proceeding, "which is a qualified privilege," and for the further reason that the plaintiff sustained no recoverable damages.
The article published in defendant's newspaper reads as follows:
 "BENDS NOT CONVINCING 
 JUDGE CUTS INJURY AWARD
Somerville  A 54 year old Plainfield carpenter was granted a $500 judgment yesterday in Somerset County Court by a skeptical judge who ordered him to bend down four times in order to determine the validity of a back injury.
After the calisthenics, Judge Samuel Chiaravalli decided the injury was not serious enough to warrant the $3,000 judgment sought by Walter H. Bock of 1003 W. Fifth St., Plainfield.
Bock sued Oscar Scharf of 61 Sycamore Ave., North Plainfield, claiming that while he was riding a bicycle Feb. 7 in Plainfield Scharf knocked him to the ground as he opened the door of his car.
Although Scharf was not in court and did not even file an answer to the lawsuit, Judge Chiaravalli said he was duty bound to explore all aspects of the case.
After testifying that his earning capacity has been virtually curbed as a result of the back injury, Bock went on to say that he earned $3,000 during 1954. * * * `Is that the amount that you listed on your income tax return?' Judge Chiaravalli asked. Bock paused and the judge repeated the question. Hesitantly Bock admitted that he listed an income of only $500.
Chastising Bock for misrepresenting his income, Judge Chiaravalli proceeded to question the severity of the back injury which Bock claimed prevented him from bending properly. `Show me what you mean' Judge Chiaravalli said. Bock got off the witness stand and squatted twice, each time coming to a standing position slowly.
`Now demonstrate how you bent down before the accident,' Judge Chiaravalli said. Bock squatted and came to a standing position quickly. He repeated the exercise again at the request of Judge Chiaravalli, but this time Bock's attorney, Robert M. Read of *307 Plainfield objected somewhat strenuously ... `I can readily see why you are objecting,' Judge Chiaravalli commented.

Award For Chest Injury
In paring the petition for a $3,000 judgment to $500 Judge Chiaravalli said the award was made mainly for a chest injury also suffered by Bock in the accident.
Earlier, Dr. Hugh M. Babbitt Jr. of Plainfield, testified that he treated Bock for the neck injury 10 days after the mishap. He added that Bock complained of the back injury three months later. X-rays, Dr. Babbitt said, showed a slight curvature at the base of the back, but did not necessarily imply that the condition resulted from the accident."
It is a generally accepted principle of law that the publication of a fair and accurate report of a judicial proceeding is qualifiedly privileged. Schwarz Bros. Co. v. Evening News Pub. Co., 84 N.J.L. 486, 496 (Sup. Ct. 1913); Rogers v. Courier Post Co., 2 N.J. 393 (1949). The privilege extends to all damages inflicted, irrespective of the reported article's defamatory character, unless there is proof that the report was published with actual malice. The publication need not report the proceedings verbatim, but is required to present a fair, impartial and accurate summary of what took place. The news story may be lively and filled with human interest, but in all matters which materially affect its purport it must be correct, for the privilege does not cover false statements of fact nor extend to distorted accounts. Rogers v. Courier Post Co., supra; Rainier's Dairies v. Raritan Valley Farms, Inc., 19 N.J. 552 (1955); Prosser on Torts (2d ed. 1955), sec. 95, pp. 624, 625; 33 Am. Jur., Libel and Slander, sec. 154, p. 149; 53 C.J.S., Libel and Slander, § 127, p. 204; Hallen, "Excessive Publication in Defamation," 16 Minn. L. Rev. 160 (1932).
Plaintiff contends that the published article is inaccurate in fact and defamatory and that, at the very least, its accuracy is genuinely in issue and hence not susceptible of determination on a motion for summary judgment, but should be left to a jury for its determination.
The accuracy of the article is challenged in the following particulars: that the "skeptical judge" in questioning the *308 severity of plaintiff's back injury "ordered him to bend down four times," twice to show how the back injury "prevented him from bending properly" and twice to "demonstrate how you bent down before the accident"; that, in compliance with the first, plaintiff "squatted twice, each time coming to a standing position slowly"; and with respect to the second, he "squatted" and "came to a standing position quickly." The article described these movements as "calisthenics" which, plaintiff contends, conveys in this instance "a meaning of joking or ridicule." A subtitle in the article read "Award for Chest Injury," and continued that "Judge Chiaravalli said the award was made mainly for a chest injury also suffered by Bock in the accident," that Dr. Babbitt "testified that he treated Bock for the neck injury 10 days after the mishap" and "did not necessarily imply that the (plaintiff's back) condition resulted from the accident."
The plaintiff in his deposition testified that each of the italicized portions of the article is inaccurate. He denied that he came to a standing position "quickly" when he showed the court how he was able to bend prior to the accident. He said: "I think that is a misstatement. I came to a standing position exactly at the same rate of speed that I had on previous occasions and that statement is made to make a fool out of me." He denied that he "squatted," but testified that "I did not squat at any time." He also denied that the award was for a chest injury but insisted it was for his back injury. Additionally, he denied that the doctor testified he had treated Bock for a neck injury ten days after the accident and, further, he asserted that the doctor stated that in his opinion the back injury "was a result of the accident."
By plaintiff's testimony the accuracy of the news report was definitely brought into dispute. A real margin of doubt exists respecting the characterization and description of plaintiff's actions and this doubt, being factual in nature, may not be dispelled by means of a motion for summary judgment. If plaintiff's testimony on the depositions *309 was true, particularly his testimony that in his demonstration of his back injury in court he arose just as slowly when showing his ability to bend prior to the injury as when showing his present condition, the news report did, indeed, unjustifiably hold him up to public contempt and ridicule. Since the question of factual accuracy and, consequently, whether the article comes within the permissible limits of qualified privilege, are genuinely in issue, unless it can be said that these issues palpably have no material bearing on the disposition of plaintiff's cause, their resolution must await a plenary hearing. R.R. 4:58-3; Devlin v. Surgent, 18 N.J. 148, 154 (1955). The trial judge erred in this regard.
The trial court found it to be evident that the plaintiff had suffered no damages, relying, in part, on N.J.S. 2A:43-2. If so, the error of the trial court as to the first phase of the ruling would be harmless. We are, however, unable to agree with this finding. The trial court relied upon testimony by plaintiff negativing any pecuniary damages as a result of the publication.
Damages in an action for libel are generally divided into three separate categories: (1) Punitive or exemplary damages, where actual malice or recklessness is shown; (2) special damages, such as loss of business, which are recoverable only upon proof of loss of specific economic benefits; and (3) general damages which the law presumes to follow inevitably from a defamatory publication and which, therefore, are often recoverable without proof of injury. 33 Am. Jur., Libel and Slander, sec. 199-202, pp. 188-192; "Developments in the Law of Defamation," 69 Harv. L. Rev. 875, 934 et seq. (1956); Prosser on Torts (2d ed. 1955), sec. 93, p. 587. While at common law general damages were found to lie in all cases of libel, the rule generally followed today is that they will be awarded only when the publication is defamatory on its face. Leers v. Green, 24 N.J. 239 (1957); Shaw v. Bender, 90 N.J.L. 147 (E. & A. 1917); 53 C.J.S., Libel and Slander, § 13, *310 pp. 57-59; see Prosser on Torts (2d ed. 1955), sec. 93, p. 588. But cf. Restatement, Torts, sec. 569, p. 165 (1938).
We are of the opinion that the article here in question is defamatory on its face, for it clearly sounds to the disreputation of the plaintiff, Leers v. Green, supra; Shaw v. Bender, supra, as it imputes to him a fraudulent claim for injuries, and makes of him a target for ridicule and contempt. Garven v. Finch, 97 N.J.L. 329 (E. & A. 1922); Dressler v. Mayer, 22 N.J. Super. 129 (App. Div. 1952); Kilpatrick v. Edge, 85 N.J.L. 7 (Sup. Ct. 1913); Restatement, Torts, sec. 559, 568, 569, pp. 140, 159, 165 (1938); 53 C.J.S., Libel and Slander, § 13, p. 57 et seq. Since, as we have stated, general damages are presumed from such a defamatory publication, a triable issue as to damages is presented unless a recovery of general damages is here precluded by N.J.S. 2A:43-2, cited by the trial court, which provides that:
"* * * in an action for libel against the owner, manager, editor, publisher or reporter of any newspaper * * * plaintiff, unless he shall prove either malice in fact or that defendant, after having been requested by plaintiff in writing to retract the libelous charge * * * failed to do so within a reasonable time, shall recover only his actual damage proved and specially alleged in the complaint." (Emphasis supplied)
The plaintiff concedes that he failed to request a retraction and as a consequence, in the absence of proof of "malice in fact," his recovery is limited to the statutory provision of "actual damage proved and specially alleged."
The term "actual damage" in this statute was defined to include both general and special damages, so long as they are both specifically alleged in the complaint. Stuart v. News Publishing Co., 67 N.J.L. 317 (E. & A. 1902); Neafie v. Hoboken Printing & Pub. Co., 75 N.J.L. 564 (E. & A. 1907); Walsh v. Trenton Times, Inc., 124 N.J.L. 23 (E. & A. 1939). In this regard our courts have held the expression "actual damage" to be synonymous with compensatory damages, Marsh v. Edge, 68 N.J.L. 661 (E. & A. 1902). Similar interpretation has been accepted in other jurisdictions having statutes of substantially the *311 same nature and purpose as ours which limit recovery to "actual damage" or "actual injury." Comer v. Age Herald Pub. Co., 151 Ala. 613, 44 So. 673, 13 L.R.A., N.S., 525 (Sup. Ct. 1907); Miami Herald Pub. Co. v. Brown, 66 So.2d 679 (Sup. Ct. Fla. 1953); Ellis v. Brockton Pub. Co., 198 Mass. 538, 84 N.E. 1018 (Sup. Jud. Ct. 1908); Osborn v. Leach, 135 N.C. 628, 47 S.E. 811, 66 L.R.A. 648 (Sup. Ct. 1904). In the state of Connecticut, however, which has a statute identical in its terms to ours, the term "actual damage" has been found to include only special damages. Sandora v. Times Co., 113 Conn. 574, 155 A. 819 (Sup. Ct. Err. 1931). For the various statutes in other jurisdictions see Leflar, "Legal Remedies for Defamation," 6 Ark. L. Rev. 423, 437 (1952); Morris, "Inadvertent Newspaper Libel and Retraction," 32 Ill. L. Rev. 36, 41 (1937); Donnelly, "The Law of Defamation, Proposals for Reform," 33 Minn. L. Rev. 609, 613 (1949); Donnelly, "The Right Of Reply; An Alternative To An Action For Libel," 34 Va. L. Rev. 867, 892-6 (1948).
With due deference to the view taken in Sandora v. Times Co., supra, we do not agree that injury to one's reputation or feelings or other injuries for which general damages may be awarded, do not constitute elements of actual damage. Although they are seldom susceptible of exact evaluation, they are nonetheless real, and, because of the difficulty in proving special damages attributable to a libel, are often the only injuries for which recovery is obtained, 69 Harv. L. Rev. supra, at p. 888. The underlying purpose of our statute, it has been said, is to afford a newspaper or like publication an opportunity, by retraction, to escape punitive damages. Lindsey v. Evening Journal Association, 10 N.J. Misc. 1275, 1278 (Sup. Ct. 1932). Consistent with this purpose, plaintiff here, having made no request for retraction, may not recover punitive damages, unless he shall prove actual malice beyond what might be implied from the publication itself, Weir v. McEwan, 94 N.J.L. 92 (Sup. Ct. 1920), but he is not precluded from recovering the general damages he sustained.
*312 We are not insensitive to the fact that the statute speaks of "actual damage proved and specially alleged in the complaint." However, this requirement that damages be "proved" is not necessarily inconsistent with an allowance of general damages by "presumption." Such a presumption arises by logical inference from the patently defamatory character of a publication, assisted by the reasoning of experience, and stands as an element of proof which, until overcome by contrary proof, will support a verdict for general damages. Stuart v. News Publishing Co., supra, 67 N.J.L., at page 319; Kelly v. Hoffman, 9 N.J. Super. 422, 430 (Law Div. 1950); Miami Herald Pub. Co. v. Brown, supra. As the defendant here has failed even to controvert plaintiff's allegation that he "has been greatly injured in his credit and reputation, has suffered great pain and mental anguish and has been brought into public scandal, infamy, and disgrace, and has lost customers and business in his vocation," a summary judgment of dismissal based merely upon plaintiff's failure to show pecuniary damage cannot stand. Neafie v. Hoboken Printing & Pub. Co., supra; Walsh v. Trenton Times, Inc., supra.
As to the question of punitive damages, recoverable as indicated only upon showing of "malice in fact," it is observed that malice in fact or actual malice includes not only "ill will, or some wrongful motive, implying a willingness or intent to injure" but also "such a want of feeling as to impute a bad motive." Weir v. McEwan, supra; Hoffman v. Trenton Times, 17 N.J. Misc. 339 (Sup. Ct. 1939), affirmed 125 N.J.L. 450 (E. & A. 1940); Jorgensen v. Pennsylvania Railroad Co., 38 N.J. Super. 317 (App. Div. 1955), certification denied 20 N.J. 308 (1956); 53 C.J.S., Libel and Slander, § 2, p. 36. And see Fahr v. Hayes, 50 N.J.L. 275, 279 (Sup. Ct. 1888). Defendant contends that a finding of malice is negated by the fact that no one at its newspaper was even acquainted with Bock, or he with them. However, the effect of ridicule is not diminished, nor its use less blameworthy, because its author is unacquainted with his subject; nor will relief be withheld *313 where, though the proof fails to disclose a designedly evil intent, it suggests a calculated disregard of the consequences. This is not to suggest that such a disregard is here manifested but rather to emphasize that the record submitted for our consideration, in our opinion, falls short of showing palpably that there is no genuine issue of fact as to defendant's actual malice. We are supported in this regard by Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, at page 76 (1954), where it is stated that "in any case where the subjective elements of willfulness, intent or good faith of the moving party are material to the claim or defense of the opposing party, a conclusion from papers alone that palpably there exists no genuine issue of material fact will ordinarily be very difficult to sustain."
Thus, trial of the issue of malice will not be foreclosed. On the trial, however, it must be borne in mind that before malice on the part of the defendant can be found, there must be proof of authorization or ratification by it of the publication of the challenged article. Neafie v. Hoboken Printing & Pub. Co., 72 N.J.L. 340 (Sup. Ct. 1906).
The summary judgment is reversed.